# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

IN RE: CONFLICT OF INTEREST OF THE    :    No. 125 EM 2019
OFFICE OF THE PHILADELPHIA    :
DISTRICT ATTORNEY,    :
   :
   :
   :
PETITION OF: MAUREEN FAULKNER,    :
WIDOW OF DECEASED POLICE OFFICER    :
DANIEL FAULKNER    :
   :

## DISSENTING STATEMENT

**JUSTICE MUNDY**                      **FILED: December 16, 2020**

I respectfully dissent from the per curiam order dismissing the King's Bench petition filed by Maureen Faulkner.

On March 3, 2020, this Court issued an order stating, in relevant part:

> The special master shall conduct such hearings or other proceedings . . . as may be required to determine if the participation in the underlying criminal case (*Commonwealth v. Wesley Cook, a/k//a Mumia Abu-Jamal*, No. 290 EDA 2019, CP-51-CR-0113571-1982) by any attorneys or staff of the Philadelphia District Attorney's Office who have been identified in the King's Bench Petition presents the appearance of a conflict of interest such as to impede the fair and impartial administration of justice.

Order, 3/3/20.

Unlike my colleagues, I conclude that the record before us establishes an appearance of impropriety that warrants transferring this case from the District Attorney's Office (DAO) to the Office of the Attorney General (OAG). Section 1401(o) of the County Code provides, in relevant part, that "[a] district attorney shall be subject to the . . . canons

of ethics as applied to judges in the courts of common pleas of this Commonwealth insofar as such canons apply to . . . conflicts of interest." 16 P.S. § 1401(o). Rule 1.2 of the Code of Judicial Conduct provides: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Pa. Code Jud. Conduct Rule 1.2. Comment 5 to Rule 1.2 provides, in relevant part: "The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's . . . impartiality[]" Pa. Code Jud. Conduct Rule 1.2 cmt. 5.

Because Justice Dougherty has accurately and concisely set forth the factual and procedural history of this high-profile case in his Concurring Statement, I will not repeat them here. Like Justice Dougherty, I am troubled by the DAO's decision to withdraw its appeal from the order reinstating Abu-Jamal's appellate rights *nunc pro tunc*, and its concession to a remand without having interviewed Joseph McGill, the trial prosecutor who had personal knowledge of the facts on which the remand was, in part, based. Also concerning, as Justice Dougherty points out, are District Attorney Krasner's reference to former prosecutors as "war criminals," and the existence of evidence in the record that Paul George, Assistant Supervisor of the DAO's Law Division, who represented Abu-Jamal in the past, was not adequately screened from the instant matter.

With respect to Attorney George, I find it particularly significant that "in 2007, [Attorney] George signed as local counsel an appellate brief filed on behalf of Abu-Jamal." Special Master's Report, 6/17/20, at 15. The Special Master notes that Attorney George testified he did not write the brief, and has never met or spoken to Abu-Jamal. However, the Special Master acknowledges the "brief alleges a variety of police misconduct in the *Abu-Jamal* case." *Id.* The fact that an attorney who represented Abu-Jamal has a

supervisory position in the Division of the DAO that "oversees the PCRA Unit and the Appeals Unit," *id.*, raises serious questions as to whether he could ever have been effectively screened from this matter in light of his responsibility for performance reviews of prosecutors involved in this case. *See* Concurring Statement (Dougherty, J.) at 16-17.

Even accepting the Special Master's conclusion that no actual conflict of interest existed due to Attorney George's signing of a brief, I conclude that the appearance of impropriety still exists. Viewed from the perspective of a reasonable non-lawyer citizen, Attorney George acted as an advocate for Abu-Jamal when he signed the brief as local counsel. This, combined with Attorney George's current supervisory role in the DAO (despite efforts to screen him from the matter), creates such an appearance because under these circumstances a reasonable person would conclude that the DAO's conduct adversely reflects on its impartiality. *See* Pa. Code Jud. Conduct Rule 1.2 cmt. 5.

So too does District Attorney Krasner's use of the outrageous term "war criminals" when referring to former prosecutors who worked on this case. Such words are particularly disturbing in the context of a matter that has garnered worldwide notoriety, and has become central to public debate on several issues, including the death penalty. The Explanatory Comment to Rule of Professional Conduct 3.8 (Special Responsibilities of a Prosecutor) provides that "[a] prosecutor has the responsibility of a minister of justice[.]" Pa.R.P.C. 3.8 cmt. 1. While the focus of the comment is on the prosecutor's obligation to respect the rights of a defendant, the responsibility of a minister of justice surely includes the obligation of a prosecutor to refrain from making baseless and inflammatory remarks regarding former DAO attorneys. This is especially so where it is the District Attorney himself who has made the untoward statements.

I believe that the actions discussed above, viewed as a whole, would lead a reasonable person to perceive that the District Attorney and the DAO are unable to handle matters related to Abu-Jamal impartially. Accordingly, public confidence in the rule of law requires the involvement of the DAO in this matter to cease.

In his Concurring Statement, Justice Dougherty notes that in light of our recent decision in *Commonwealth v. Reid*, 235 A.3d 1124 (Pa. 2020), there is "no pressing need for any additional action on our part at this stage." Concurring Statement (Dougherty, J.), at 20. However, considering that we are now reviewing a case that began in 1981, and that has been the subject of seemingly endless litigation, I can only assume that more will follow.

Although the Special Master came to a different conclusion, I believe the factual record developed in the instant proceeding supports removal of the DAO due to the appearance of a conflict of interest.[1] Furthermore, I would remove the DAO now rather than revisit the issue in the future as suggested by the Concurring Statement. *Id.*

The District Attorney having offered no compelling reason to the contrary, I would appoint the OAG to assume representation of the Commonwealth. This would allow the case to proceed free from the appearance of impropriety that undermines our citizenry's faith in the legal system.

Accordingly, I dissent.

---

[1] This Court engages in *de novo* review of the Special Master's findings of facts and conclusions of law. *See* Concurring Statement (Dougherty. J.) at 11-12.